UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PLAN ADMINISTRATOR,

       Appellant,                                           Case No. 2:22-cv-2032
                                                        JUDGE EDMUND A. SARGUS, JR.

v.

ANDERSON EXCAVATING, LLC *et al.*,

       Appellees.

---

PLAN ADMINISTRATOR,

       Appellant,                                           Case No. 2:22-cv-2033
                                                        JUDGE EDMUND A. SARGUS, JR.

v.

CONSOLIDATED ELECTRICAL
DISTRIBUTORS, INC. *et al.*,

       Appellees.

---

GMS MINE REPAIR &
MAINTENANCE INC., et al.,

       Appellants,                                        Case No. 2:22-cv-2177
                                                     JUDGE EDMUND A. SARGUS, JR.

v.

DRIVETRAIN, LLC *et al.*,

       Appellees.

## OPINION AND ORDER

This matter is before the Court on three Motions for Leave to File Interlocutory Appeals of two non-final decisions of the United States Bankruptcy Court for the Southern District of

1

Ohio.  For the reasons that follow, these requests for permission to file interlocutory appeals are **DENIED**.

## I.

Prior to October 29, 2019, Appellees Anderson Excavating, LLC, GMS Mine Repair & Maintenance, Inc. and Pioneer Conveyor, LLC, and Wayne's Water 'N' Wells, Inc. ("Claimants"), among others, contracted with and supplied services to Murray Energy Holdings Company and its affiliates.  Murray Energy Holdings Company and ninety-eight affiliates ("Debtors") each filed a voluntary petition under Chapter 11 of Title 11 of the United States Code in the Bankruptcy Court, that were consolidated before Chief Judge John E. Hoffman in *In re: Murray Energy Holdings, Co., et al.*, Chapter 11, Case No. 19-56885 (S.D. Ohio).

Drivetrain, LLC is the trustee and administrator for the Murray Energy Wind-Down Trust ("Plan Administrator").  The Claimants are manufacturers of components for custom-made conveyor structures and suppliers of various services including mine maintenance labor, drilling, pumping, excavation, construction, trucking, soil modification and environmental work.  The Claimants filed notices of liens under West Virginia Code § 38-2-31 ("Section 31 Notices") that purport to encumber the property improved and all real estate and personal property owned by the Debtors with whom the Claimants contracted to perform work or labor.  The Claimants also filed proofs of claims based on those mechanic's/laborer's liens ("Section 31 Claims").

The Plan Administrator has moved to interlocutorily appeal two decisions issued by Chief Judge Hoffman (Case No. 2:22-cv-2032 and Case No. 2:22-cv-2033), and GMS Mine Repair & Maintenance, Inc. and Pioneer Conveyor, LLC, has cross appealed (Case No. 2:22-cv-2177).

## II.

This Court has jurisdiction over final orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). "A final order 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Belfance v. Bushey*, 210 B.R. 95, 98 (6th Cir. BAP 1997) (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 879 (1989)).

"The Bankruptcy Rules do not provide standards for determining when leave to appeal an interlocutory order should be granted. In the absence of such guidance within the Bankruptcy Rules, appellate courts reviewing the decisions of bankruptcy courts have applied the standards found in 28 U.S.C. § 1292(b), which define the courts of appeals' jurisdiction to review interlocutory orders." *In re Wicheff*, 215 B.R. 839, 843 (Bankr. App. 6th Cir. 1998) ("Leave to appeal is uncommon, allowing interlocutory appeals only when the stringent standard for analogous interlocutory appeals pursuant to 28 U.S.C. § 1292(b) are met."). Under § 1292(b), an appellant seeking review of an interlocutory order must show:

> (1) the question involved is one of law; (2) the question is controlling; (3) there is substantial ground for difference of opinion respecting the correctness of the [bankruptcy] court's decision; and (4) an immediate appeal would materially advance the ultimate termination of the litigation.
>
> Review under § 1292(b) should be sparingly granted and then only in exceptional cases. *Vitols v. Citizens Banking Co.*, 984 F.2d 168, 170 (6th Cir.1993) (internal citations omitted). *See also Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 179 B.R. 24, 28 (S.D.N.Y.1995) ("[L]eave to appeal from interlocutory orders should be granted only in 'exceptional circumstances' because to do otherwise would 'contravene the well-established judicial policy of discouraging interlocutory appeals and avoiding the delay and disruption which results from such piecemeal litigation.'").

*Id*. at 844.

### III.

The Court addresses below (A) the Plan Administrator's request for leave to appeal in Case No. 2:22-cv-2032, (B) the Plan Administrator's motion for leave to appeal in Case No. 2:22-cv-2033, and (C) the Claimants' request to cross appeal in Case No. 2:22-cv-2177.

**A.    Plan Administrator's Motion for Leave to Appeal, Case No. 2:22-cv-2032**

On June 23, 2020, the Debtors filed an objection to certain mechanic's liens, requesting that the Bankruptcy Court reclassify the Section 31 Claims as general unsecured claims (ECF No. 1749 in Bankruptcy Case) and moved for summary judgment. After full briefing and oral argument, the Bankruptcy Court issued its decision ("Rule 31 Order") on March 31, 2022. In the Rule 31 Order, the Bankruptcy Court held:

> For the reasons set forth above, the Court hereby **ORDERS** that:
>
> (1) Partial summary judgment is **GRANTED** in favor of Claimants as to [the Plan Administrator] Drivetrain's request for a ruling invalidating the Claimants' liens based on their purported ineligibility to file under W.Va. § 38-2-31. The Claimants are eligible to file liens under W.Va. Code § 38-2-31.
>
> (2) Partial summary judgment is **GRANTED** in favor of [the Plan Administrator] Drivetrain on GMS's and Pioneer's request for a ruling that W.Va. Code § 38-2-17 repealed by implication the limitation on priority set forth in W.Va. Code § 38-2-31. The one-month limitation set forth in Section 31 is valid and enforceable.
>
> (3) Except for the Motion for Summary Judgment relating to Pioneer's claims, [the Plan Administrator] Drivetrain's request to invalidate the Claimants' liens based on their purported noncompliance with Section 33 will be **HELD IN ABEYANCE** pending the outcome of the parties' attempt to determine the amounts for which priority may be claimed. Partial summary judgment is **GRANTED** in favor of Pioneer on Drivetrain's request for a ruling invalidating Pioneer's claims for noncompliance with Section 33. The one-month amounts set forth in Pioneer's Notices of Lien are **ALLOWED** as secured claims with priority over later liens.

(Rule 31 Order at 39, Case No. 2:22-cv-2032 at 43.)

The Plan Administrator appeals the portions of the Rule 31 Order that were unfavorable to it or were held in abeyance. The Plan Administrator argues that this Court should grant its request for leave to interlocutorily appeal because all of the 28 U.S.C. § 1292(b) factors are met.

The Plan Administrator addresses together the first three § 1292(b) criteria that it must meet for the Court to grant leave to appeal non-final order of the Bankruptcy Court, (*i.e.*, the question involved is one of law; the question is controlling; and there is substantial ground for difference of opinion respecting the correctness of the bankruptcy] court's decision). The Plan Administrator posits:

> With respect to the first three criteria, the issue of a corporation's eligibility for a Laborer's Lien is a controlling question of law in this case – an issue that affects both portions of the challenged Section 31 Order – and the Bankruptcy Court's ruling differs from other authorities on the subject. West Virginia mechanic's lien law governs the disposition of this issue and case law interpreting W.Va. 38-2-31 confirms that corporations can be eligible for a Laborer's Lien if they perform work of an "individual character as distinguished from corporate service." *Wetzel & T.R. Co. v. Tennis Bros. Co.*, 145 F. 458 (4th Cir. 1906) (interpreting predecessor of W.Va. 38-2-31) and *Kimball v. Sundstrom & Stratton C*o., 92 S.E. 737, 740 (1917) (reaffirming *Wetzel* under West Virginia law).
>
> The Bankruptcy Court misinterpreted this limiting principle from the *Wetzel* holding as dicta because, at least in part, it was unable to find subsequent case law that contradicted or refuted same while minimizing the West Virginia Supreme Court decision (*Kimball*) that reaffirmed the Laborer Lien statute's "personal service" requirement. (Section 31 Order, at 12-15 and n.7.) The Bankruptcy Court's ruling that the nature of the corporation's work is immaterial to laborer lien entitlement also contravenes Michie's Jurisprudence, a reliable reference in West Virginia law libraries for decades. *See* 12A M.J. LIEN § 13 (2020) ("A corporation . . . has a right to a lien when the character of its services comes within the terms of the statute." (Citing *Wetzel*.)

(Plan Administrator's Mot. at 5–6, ECF No. 1-1, Case No. 2:22-cv-2032.)

The Claimants disagree. (ECF No. 4, Case No. 2:22-cv-2032.) They first argue that "the Motion misstates the question involved as one of law, where the Motion clearly acknowledges that corporations are eligible to file liens under W.Va. Code §38-2-31, but suggests that this is so

5

only if 'it performs work of an individual character;' which plainly is a question of fact." (Claimants' Resp. in Opp. at 2, ECF No. 4, Case No. 2:22-cv-2032.) The Claimants also contend that there is no substantial ground for difference of opinion respecting the correctness of the Bankruptcy Court's decision. The Claimants' arguments are well taken.

While the issue of whether work is of an individual character certainly appears to be a question of fact, the Court need not address this argument because even if the issue was one of law and that law was controlling (meeting the first two criteria), no ground for difference of opinion respecting the correctness of the Bankruptcy Court's decision exists, let alone a substantial one.

A substantial ground for a difference of opinion exists when: "(1) the issue is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue." *Ruhl v. Ohio Dep't of Health*, No. 16-CV-773, 2016 WL 5869828, at *4 (N.D. Ohio Oct. 7, 2016) (citations omitted). Even where there is not contradictory precedent, a novel issue may be certified for interlocutory appeal. *In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017) ("[W]hen novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent.") (quoting *Reese v. BP Expl., Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)). However, a circuit split alone may not be enough to constitute a substantial difference of opinion. *See In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013).

The Bankruptcy Court's decision comprehensively addresses each of the Plan Administrator's arguments, in a well-reasoned and detailed decision that correctly applies the law to the facts. Chief Judge Hoffman considers the Plan Administrator's arguments related to

West Virginia mechanic's lien law, Code § 38-2-31, which governs the disposition of this issue and the case law interpreting the statute. The Bankruptcy Court's analysis of this statute and the case law upon which Plaintiff relies, the 1906 Fourth Circuit case of *Wetzel* and the 1917 West Virginia case of *Kimball*, shows the correctness of the decision:

> [The Plan Administrator] Drivetrain's reliance on *Wetzel* is misplaced. First, Drivetrain asserts that *Wetzel's* "central holding" is that a corporation is eligible for a lien under the Laborer's Lien Statute only if it provided work of an "individual character as distinguished from corporate service." *See, e.g.*, Mem. in Resp. to GMS Mine Repair and Maintenance Inc.'s Cross-Mot. for Partial Summ. J. (Doc. 2466) at 10 (quoting *Wetzel*, 145 F. at 461–63). If that were true, this "central holding" would have presumably played an essential role in other West Virginia disputes involving corporations that have filed notices of mechanic's liens.
>
> But a review of the caselaw reflects that *Wetzel* has been cited in other cases 24 times in the 115 years since it was decided. Of those 24 cases, only seven referred to *Wetzel's* holding on the question of corporate eligibility under lien laws. Six of those—only one of which was a West Virginia case—cited *Wetzel* as establishing that a corporation is a "person" qualified to file a notice of lien,6 and none of those held that "work of an individual character" was an essential requirement of a valid laborer's lien. The seventh declined to extend *Wetzel* to a corporation employed as a logging contractor because of specific language in that state's logger's lien statute. *Jack Long Logging Co. v. Pyramid Mountain Lumber, Inc.*, 387 P.2d 712 (Mont. 1963).
>
> While there is nothing in the record addressing the point, it stands to reason that creditors of West Virginia coal mining companies have filed thousands of liens against those companies over the past 115 years. And undoubtedly corporate creditors of those mining companies made no small portion of those filings under the Laborer's Lien Statute and its predecessor. If it is in fact clear, as [the Plan Administrator] Drivetrain says, that these corporate entities could not file under the Laborer's Lien Statute unless they provided services of a personal character, it is reasonable to presume that litigation would have ensued and that there would be a body of caselaw on point. But the parties have not cited—and the Court's independent research has not uncovered—a single West Virginia decision holding that *Wetzel* imposed a work-of-an-individual-character requirement on corporations filing mechanic's liens under the Laborer's Lien Statute. This lack of caselaw support undercuts Drivetrain's position.

(Rule 31 Order at 12–13, Case No. 2:22-cv-2032) (footnotes removed).

Additionally, there is no ground for difference of opinion respecting the correctness of the Bankruptcy Court's decision that the language relied upon by the Plan Administrator is *dicta*. The Bankruptcy Court stated:

> More important, the purported limitation of the laborer's lien to those corporate services that could be considered "of a personal character," is drawn from dicta in *Wetzel*.

*Id*. at 14.

The Bankruptcy Court then goes on to accurately evaluate the law, appropriately apply the law to the facts, and clearly explain its reasoning as shown in the following:

> The *Wetzel* court began its discussion by noting that
>
> > [t]here is nothing in the context of the act under consideration, section 7, c. 75, Code, supra, that would either preclude a corporation from claiming the benefit of the act, or indicate that the words, "or other person" were used in any narrower or restricted sense. The word "person" used in the statute has not unfrequently been under review by the courts; and certainly so far as the states of Virginia and West Virginia are concerned, the use of such word "person" includes a corporation.
>
> *Wetzel*, 145 F. at 462.
>
> These two sentences establish that a corporation is treated as a "person" under West Virginia 's mechanic's lien laws. But nothing in this language limits a corporation's right to assert a West Virginia laborer's lien to those situations in which the corporation performs work of a personal character. Nor does the *Wetzel* court's observation that under common law C.C. Tennis also would be entitled to a laborer's lien create a "work of a personal character" requirement applicable to corporations claiming a lien under the Laborer's Lien Statute. In fact, the *Wetzel* court said that
>
> > [a]t common law, a corporation is deemed a "person" when the circumstances in which it is placed, are identical with those of a natural person, which, irrespective of the statute, and the construction placed thereon by the court, under the circumstances of this case, would include such a claim as the one sought to be enforced here.
>
> *Id.* at 462.

8

> *Wetzel* thus makes clear that under either statutory or common law, Tennis Bros. could file its lien under the laborer's lien statute. And "the circumstances in which it is placed" being "identical with those of a natural person" means what is commonly known—a corporation acts through its employees. Invariably it is the corporation's employees who perform services under a contract between it and another corporation (or its general contractor or a subcontractor). And when that happens the corporation is working under circumstances identical to those of a natural person: it is performing services entitling it to a lien if those services go unpaid. Indeed, Section 31 permits a corporation to file a lien for "any work or labor." In the end, the plain language of Section 31 trumps the dicta in *Wetzel* on which Drivetrain relies. And it would not be appropriate for the Court—based on this dicta—to engraft a work-of-an-individual-character limitation onto a statute containing no such restriction.

(Rule 31 Order at 13–16, Case No. 2:22-cv-2032) (footnotes removed).

As to the remaining element of the test for allowing an interlocutory appeal, the Plan Administrator contends:

> With respect to the fourth criterion, resolution of the laborer lien eligibility issue would materially advance the resolution of this case. An order invalidating the Claimants' Laborer's Liens would avoid months of further expense and unnecessary litigation surrounding the Section 31 Claims, whose collective value constitutes the overwhelming majority of the mechanic's lien dispute, and conserve judicial resources.

(Mot. for Leave to Appeal at 6, ECF No. 1-1, Case No. 2:22-cv-2032.)

In response, the Claimants maintain:

> Appellant implausibly suggests that an order invalidating the Claimants' Laborer's Liens would avoid months of further expense and unnecessary litigation surrounding the Section 31 Claims.  To the contrary, all that remains is for Appellees to supplement the record with the amount of the claim for the month for which priority is claimed.  Once this has been done, the Bankruptcy Court will issue a final order, which will then be subject to immediate appeal by any party.

(Claimants' Resp. in Opp. at 3, ECF No. 4, Case No. 2:22-cv-2032.)  This Court agrees.

Nothing in the record before the Court suggests that the grant of an interlocutory appeal would materially advance the resolution of this case.

9

Based on the foregoing, the Court concluded that this case does not present the exceptional circumstances in which it would be appropriate to hear the appeal of an interlocutory order. Therefore, the Court **DENIES** the Plan Administrator's Motion for Leave to Appeal.

B. **Plan Administrator's Appeal, Case No. 2:22-cv-2033**

After full briefing, the Bankruptcy Court denied the Plan Administrator's request for summary judgment regarding the date a mechanic's lien attaches under West Virginia Code § 38-2-17 ("Section 17"). The Bankruptcy Court held:

> Here there is a genuine dispute as to a material fact—whether the equipment Consolidated supplied to the Debtors was continually provided such that the materials it provided after July 2018 were "directly connected and are all part of the same project" as materials Consolidated provided before July 2018. Richards, 617 S.E.2d at 561. In this regard, the Court notes that the O'Leary Affidavit attaches invoices showing the regular shipment of goods by Consolidated to the Debtors both in the months leading up to and several months after July 2018. O'Leary Aff. at 109–74. Because there are genuine issues of material fact about when the electrical equipment Consolidated provided "began to be furnished," the Motion is **DENIED**.

("Mechanic's Liens' Order at 5, Case No. 2:22-cv-2033 at 9.)

The Plan Administrator again addresses together the first three criteria that it must meet for the Court to grant the review of a non-final order of the Bankruptcy Court, (*i.e.*, the question involved is one of law; the question is controlling; and there is substantial ground for difference of opinion respecting the correctness of the [bankruptcy] court's decision). And as did the Court in the analysis *supra*, it will only address whether a ground for a substantial difference of opinion respecting the correctness of the Bankruptcy Court's decision exists. To this question, the Court finds that one does not.

That is, the Plan Administrator contends that "on appeal [it] will assert that the Court erred in holding that the amendment to Section 17 did not necessitate a different conclusion— that a materialman's lien attaches as of the date materials 'giving rise to such lien' (*i.e.*, for

10

which payment is owed) were 'begun to be furnished.'" (Plan Admin. Mot. for Leave to Appeal at 7, ECF No. 1-1, Case No. 2:22-cv-2033.) The Plan Administrator asserts that the Bankruptcy Court "overlook[ed]" certain 1973 amendments to West Virginia Code § 38-2-17, which governs the priority of mechanic's liens. Based on these amendments, the Plan Administrator takes issue with the Bankruptcy Court's reliance on the decisions of the Supreme Court of Appeals of West Virginia in *Carolina Lumber Company v. Cunningham*, 192 S.E.2d 722 (1972) and *Richards v Harman*, 617 S.E.2d 556, 561 (2005).

The Court, however, disagrees. The arguments made by the Plan Administrator are the same ones made before the Bankruptcy Court, which were considered in another well-written and correct decision. Chief Judge Hoffman analyzed the West Virginia statute, considered its interpretation by the West Virginia Supreme Court in *Carolina Lumber* and *Richards*, and rendered a decision consistent with those principles. The Plan Administrator's disagreement with the decision is not sufficient to show a ground for a difference of opinion respecting the correctness of the Bankruptcy Court's opinion. That is, the Plan Administrator has failed to show that this issue is a difficult one of first impression, that there is a difference of opinion within the Sixth Circuit, that there is a circuit split, that the issue is novel, and/or that there is any other sufficient reason showing a ground for a substantial difference of opinion.

As to the fourth element this Court considers in determining whether to grant an interlocutory appeal, the Plan Administrator contends:

> As to the final criterion, resolution of whether CED's liens were senior or junior to the Mortgages would materially advance the resolution of this case. As noted above, deciding this question could determine which liens—either CED's liens or those in the Mortgages – are senior. As the priority question is the central thrust of the First Omnibus Objection, and the issue of fact regarding when CED may have become "involv[ed] in the project" would be moot in the event the Plan Administrator prevails on appeal (as it is undisputed that all amounts giving rise to the CED liens were for materials furnished after the Mortgages were filed), this

11

issue is dispositive of the dispute. As such, it serves the purposes of efficiency and judicial economy to hear the appeal now.

(Plan Admin. Mot. for Leave to Appeal at 7, ECF No. 1-1, Case No. 2:22-cv-2033.)

The Claimants disagree, asserting *inter alia*:

If the Plan Administrator is permitted to drag CED through roundabout and redundant litigation by way of an interlocutory appeal, the parties run the risk of expending more in legal fees than Claim 1750 is worth at face value. This expense does not hurt the Plan Administrator's bottom line, but it does threaten the return that the Plan Administrator will pay to holders of allowed claims. Therefore, the Plan Administrator has not shown that the interlocutory appeal will materially advance the litigation.

(ECF No. 7 at 10, Case No. 2:22-cv-2033.) This Court agrees.

Accordingly, the Court concludes that this case does not present the exceptional circumstances of which it would be appropriate to hear the appeal of an interlocutory order of the Bankruptcy Court. Thus, the Court **DENIES** the Plan Administrator's Motion for Leave to Appeal.

C.     **Cross Appeal, Case No. 2:22-cv-2177**

GMS Mine Repair & Maintenance, Inc. and Pioneer Conveyor, LLC, one of the Claimants, has cross appealed, asking the Court to allow it to appeal if it grants the Plan Administrator's requests to appeal. (Case No. 2:22-cv-2177.) The Cross Appeal request is wholly contingent upon this Court granting the Plan Administrator's request for interlocutory appeal. Because the Court denies the Plan Administrator's request to appeal, the Court necessarily declines to review Claimants request to cross appeal. Accordingly, the Court **DENIES** these Claimants' Motion to File a Cross Appeal.

**IV.**

As set forth above, the Court **DENIES** the Plan Administrator's Appeal set out in Case No. 2:22-cv-2032; **DENIES** the Plan Administrator's Appeal addressed in Case No. 2:22-cv-2033; and **DENIES** the Claimant's Cross Appeal filed as Case No. 2:22-cv-

2177. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order and to **CLOSE** all three of these cases.

    **IT IS SO ORDERED.**

| | |
|---|---|
| **March 27, 2023** | /s/ Edmund A. Sargus, Jr. |
| **DATE** | **EDMUND A. SARGUS, JR.** |
| | **UNITED STATES DISTRICT JUDGE** |